IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN  DIVISION

HAROLD WARD

      Plaintiff

VS.                            NO: 4:04CV00671  SWW

INTERNATIONAL PAPER
COMPANY

      Defendant

## ORDER

Plaintiff Harold Ward ("Ward") claims that Defendant International Paper Company ("International") terminated his employment based on his age, in violation of  the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.  Now before the Court is International's motion for summary judgment (docket entry #16), Ward's response (docket entry #29), and International's reply (docket entry #33).  After careful consideration, and for the reasons that follow, the motion for summary judgment will be granted.

### I.  Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). When considering a motion for summary judgment, a court must construe all evidence in favor of the non-moving party. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). However, the non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affilliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

**II.  Background**

In 1990 or 1991, International acquired a plant in Conway, Arkansas that included box manufacturing and graphics operations. Ward worked at the plant as a production manager, and International promoted him to the position of quality manager. Ward implemented a quality control system for the plant. He also conducted team building, training, statistical charting, and data collection studies, and he helped to resolve customer quality control problems.

International separated the box manufacturing and graphics operations into two distinct

enterprises.[1]  Ward, who had worked as the quality manager for both operations, became quality manager for the graphics operation, and International hired another quality manager for the box manufacturing operation.

In 2000, after International separated the box manufacturing and graphics operations, the graphics operation lost money.  Chris Maitin, Ward's supervisor, assigned Ward the task of implementing a new manufacturing system that would improve planning, scheduling, and inventory controls.  Ward carried out Maitin's instructions, and graphics made a profit in 2001.  That year, Ward received a  "key contributor" job performance rating–the highest rating available to International's employees.

Sometime in 2001, International's national headquarters announced plans to reduce costs by way of a reduction in workforce program dubbed "Functional FAST."  *See* docket entry #29, Ex. 17.   Under the Functional FAST program, International would eliminate salaried positions that carried work duties that could be efficiently combined with duties of other positions.   In June 2002, International announced that it would sell five of its plants, including its plant in Conway.  According to Bruce Wilson, a general manager at the Conway plant, the decision to sell staved off, for a time, execution of the Functional FAST program.  *See* docket entry #16, Ex. 5, ¶ 6.

In November 2002, International withdrew the Conway plant from the market and proceeded with the Functional FAST program in Conway.  Dave Irvin, manager of the Conway graphics operations; Sue Beightol, human resource generalist for the Conway plant; and Wilson,

---

[1]The record contains no specific information as to when International separated the graphics and box manufacturing operations.

determined that Ward's position would be eliminated under the Functional FAST program. Ward's last day of work was December 31, 2002, seven days before his 54th birthday.

### III.  Discussion

Because Ward presents no direct evidence of age discrimination, the Court will analyze his claim under the three-stage order of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).  Under that framework, Ward must first establish a prima facie case of age discrimination, specifically that (1) he was at least 40 years of age at the time of his termination, (2) he satisfied the applicable job qualifications, (3) he was discharged, and (4) age was a factor in International's decision to terminate his employment.  *See Chambers v. Metropolitan Property and Casualty Ins. Co.,* 351 F.3d 848 (8th Cir. 2003).  If Ward establishes a prima facie case, International must articulate some legitimate, nondiscriminatory reason for terminating him.  *Id*. Finally, the burden shifts back to Ward to show that International's proffered reasons are pretextual and that age was a determinative factor in the decision to end his employment.  *Id*. at 1336-37.

International asserts that Ward cannot show that age was a factor in the decision to terminate his employment. Additionally, International asserts a non-discriminatory reason for its decision: Ward's position was eliminated in order to reduce costs pursuant to the Functional FAST program.  International contends that Ward is unable to establish that its proffered reason is pretext for age discrimination.

Ward maintains that he can show that age was a factor in his discharge because

International assigned his job duties to a younger employee, Mike Long ("Long").[2]  According to Ward, Long's current duties are almost identical to those he performed as the quality manager over graphics.

Long began working for International in 2000, when the graphics and box manufacturing operations were separate.  *See* docket entry #16, Ex. 8, at 5.  It is undisputed that Long performed no work involving the graphics operations until the graphics and box manufacturing operations merged in May 2003, five months after Ward's termination.  *See* docket entry # 32, ¶ 62.  Additionally, it is undisputed that Long's current duties involve graphics and box manufacturing operations, but Ward's duties, at the time of his discharge, were confined to the graphics operations.[3]  Although Long's current position may subsume duties once performed by Ward, Long cannot be considered Ward's replacement.   It is well established that redistribution of duties to younger workers after a reduction in force is not evidence of discrimination.  *See Chambers*, 351 F.3d at 856-57.

Ward contends that "of the positions that were eliminated, 71% of those employees were over 50 years of age." Docket entry #30, at 1.  By affidavit, Ward testifies:  "The Defendant eliminated 10% of positions of which 6 were occupied by individuals over the age of 40 and 4

---

[2]Ward fails to provide critical information: Long's precise age.  However, in its reply brief, International indicates that Long is under 40 years old.  See docket entry #33, at 13.  Accordingly, for the purpose of review,  the Court will assume that Long is under 40 years of age.

[3]In his deposition, Ward testified that he assisted quality control managers in the box plant "when they initially came into the plant" because they were unfamiliar with manufacturing systems.  Docket entry #16, Ex. 1, at 18.  However, he acknowledged that the box manufacturing and graphics plants had separate quality control managers because International "did not feel that one person could handle the whole thing . . . so they split it up and put another quality manager over there [in the box manufacturing plant].  *Id*. at 17.

were over 50." Docket entry #29, Ex. 46, ¶ 7. Without more information, these numbers are meaningless. In order for statistical evidence to be probative of pretext or discrimination in a reduction in force case, it must analyze the difference in the percentage of older employees in the work force before and after the reduction in force. *See Chambers*, 351 F.3d at 856. Ward provides no such analysis.

Ward claims that at a meeting in June 2002, regarding the sale of the Conway plant, Wilson suggested that it would be an excellent time for Ward, who was 53 years old at the time, to retire. It is undisputed that in response to Wilson's suggestion, Ward stated that he could not afford to retire, and Wilson never again suggested that Ward should retire. Docket entry #32, ¶¶ 31, 32. Wilson's comment, without more, cannot support an inference of discrimination and should not preclude summary judgment. *See Thomure v. Phillips Furniture Co.*, 30 F.3d 1020, 1025 (8th Cir. 1994)(concluding that a single remark that employee might want to retire did not reflect a discriminatory animus in the decisional process).

In October 2002, Wilson gave Ward 2.2% raise in salary. Ward submitted a complaint to the human resources department that younger employees, who were not rated key contributors, received higher raises than he. Ward states that he withdrew from the grievance process because he believed that the person assigned to investigate his complaint was biased in favor of Wilson. Docket entry #32, ¶ 37. In his response in opposition to summary judgment, Ward states that his "complaint was met with no reasonable investigation since he requested that it be investigated by the legal department only, but the Defendant gave it to human resource individuals who Plaintiff had previous problems with." Docket entry #30, at 2.

Ward presents no evidence that he was paid less than younger, similarly-situated

employees. Further, Ward's dissatisfaction with International's investigation of his unequal pay complaint provides no basis for inferring age discrimination in International's decision to eliminate his position.

Ward argues that genuine issues for trial remain because International's stated reasons for terminating three other employees--Sammie Cockrell, Carol Almand, and Richard Allen--are in dispute. In order to establish a prima facie case of age-based discrimination, Ward shoulders the burden to show that *his* termination occurred under circumstances giving rise to an inference of age discrimination. Ward cannot salvage his wrongful termination claim solely with evidence concerning other employees' terminations.

Ward does not dispute that International's Functional FAST program was necessary, but he contends that Irwin, Beighton, and Wilson failed to carry out the program's goals of improving financial performance and customer satisfaction. *See* docket entry #32, ¶ 24; docket entry #30, at 3. Ward reasons that if the Conway decision makers had been true to the program's goals, they would never have terminated him. However, the Court has no authority to second guess the wisdom of International's decision, except to the extent that it involved intentional discrimination.

Finally, Ward contends that when Irvin, Beighton, and Wilson determined which positions to eliminate, they failed to consider all management positions for possible elimination. Ward points to a portion of Irvin's deposition testimony, which reads as follows:

> Q: What positions were considered for elimination that were not eliminated?
> A: None that I recall.

Docket entry #29, Ex. 43, at 18. Ward ignores other portions of Irvin's testimony indicating that he did consider eliminating positions that were not ultimately eliminated. Irvin testified that the

decision makers considered combining the print manager's and the manufacturing manager's positions, *see* docket entry #29, Ex. 43, at 30-31, and considered eliminating the graphics manager's position. *Id*. at 33-35. In fact, Irvin testified that "there was an analysis of all responsibilities throughout the lead team." *Id*. at 34-35.

Even if Irvin's testimony were enough to discredit International's asserted reason for terminating Ward, Ward has failed to come forward with evidence showing that the circumstances permit a reasonable inference that age was a factor in his termination. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005)("We have recognized that the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. Johnson is also required to show that the circumstances permit a reasonable inference to be drawn that the real reason AT & T terminated him was because of his race.")(citations omitted). Accordingly, the Court finds no genuine issues for trial in this case.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (docket entry #16) is GRANTED. Pursuant to the judgment entered together with this order, this case is DISMISSED WITH PREJUDICE. IT IS FURTHER ORDERED that Defendant's motion to strike (docket entry #34) is DENIED AS MOOT.

IT IS SO ORDERED THIS 20TH DAY OF APRIL, 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE